Frederic G. Ludwig, III (CA Bar. No. 205332)
eric.ludwig@ludwigiplaw.com
Andrew J. Kubik (CA Bar No. 246902)
andrew.kubik@ludwigiplaw.com
LUDWIG, APC
12463 Rancho Bernardo Road, No. 532
San Diego, California 92128
Telephone: 619-929-0873

Attorney for Plaintiff PATRICK J. CAUGHEY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK J. CAUGHEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LIVELY ROOT TECHNOLOGIES, INC., a Delaware corporation; COLIN BARCELOUX, an individual; and DOES 1-10,<br><br>Defendants. | Case No. 3:22-cv-01868-RSH-AGS<br><br>**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, DECLARATORY JUDGMENT, BREACH OF CONTRACT, PROMISSORY ESTOPPEL, FRAUD, NEGLIGENT MISREPRESENTATION, BREACH OF FIDUCIARY DUTY, AND DEFAMATION**<br><br>**JURY TRIAL DEMANDED** |

PATRICK J. CAUGHEY ("Plaintiff" or "CAUGHEY"), by and though his undersigned attorney, hereby submits the following First Amended Complaint and prays to this honorable Court for relief based on the following:

## JURISDICTION AND VENUE

1.     This action arises under the Copyright Act of 1976, Title 17 U.S.C., § 101 *et seq.*, as well as the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure, to the extent Plaintiff seeks declaratory relief.

2.     In addition to Plaintiff's claims for money damages, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.



3.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 1338 (a) and (b), and it also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendants because Defendant LIVELY ROOT has its principal place of business in this District and all Defendants have engaged in substantial activity within California and this District and have substantial contacts here, having purposefully availed themselves of the privilege of conducting activities in the forum.   Furthermore, Defendants caused injury to Plaintiff within California and within this District.

5.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because CAUGHEY resides, and LIVELY ROOT has its principal place of business, in this District and substantial part of the events and/or omission giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6.     Plaintiff CAUGHEY is an individual with his principal residence located in San Diego County, California.

7.     Plaintiff is informed and believes and thereon alleges that Defendant LIVELY ROOT TECHNOLOGIES, INC. ("LIVELY ROOT") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 600 B Street, Suite 300, San Diego, California 92101 and doing business in and with the state of California.

8.     Plaintiff is informed and believes and thereon alleges that Defendant COLIN BARCELOUX ("BARCELOUX") is an individual with his principal residence located in Alamo, California.  At all times relevant herein, BARCELOUX has been, and currently is, the Chief Executive Officer of LIVELY ROOT.

9.     Plaintiff is informed and believes and thereon alleges that defendants DOES 1 through 10, inclusive, are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights,



or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues DOE Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when such information has been ascertained. (LIVELY ROOT, BARCELOUX, and DOES 1-10 are collectively hereinafter referred to as "Defendants").

10.    Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and/or adopted each of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby

**BACKGROUND**

11.    In early 2019, CAUGHEY and third-parties Jon Ewing, Steve Pyle, and Jerry Halamuda met to discuss the creation of an eCommerce nursey business, marketed toward members of the Millennial and Gen-Z generations.  The meeting led CAUGHEY and the entity that would become LIVELY ROOT, to enter into a written agreement, dated April 9, 2019, detailing the independent consulting services CAUGHEY would provide the new organization, as well as the terms of his compensation (the "Consulting Agreement").  Ewing and Pyle signed the Consulting Agreement on behalf of LIVELY ROOT[1].

12.    Following execution of the Consulting Agreement, CAUGHEY took

---

[1] The Consulting Agreement was entered into in the name of an entity known as "Plant Source," which became LIVELY ROOT.  On information and belief, CAUGHEY alleges LIVELY ROOT is the successor in interest to Plant Source, having assumed all rights and responsibilities of Plant Source, including an assignment of such rights and responsibilities in the Consulting Agreement.

steps to build the software and hardware infrastructure necessary to operate the business, which the parties named "Lively Root."  Such efforts included, but were not limited to, drafting original computer software code, registering the Internet domain name "livelyroot.com," taking professional-grade photographs of plants and other related products, which would be sold through the online retail portal, and drafting written marketing collateral and associated text for use on the eCommerce site.

13.    The LIVELY ROOT business launched in August 2019.  After an initially slow start, sales increased dramatically in April and May 2020, as the COVID-19 pandemic prompts consumers to turn to online shopping and the company fine-tunes its marketing strategy.  LIVELY ROOT then hires BARCELOUX as its new CEO in June 2020 and business continues to grow, thereafter.

14.    Despite the success enjoyed by LIVELY ROOT, the company failed to pay CAUGHEY much of the compensation due and owing under the Consulting Agreement.  CAUGHEY repeatedly raised the issue of LIVELY ROOT's failure to pay to LIVELY ROOT management, including BARCELOUX, in an attempt to resolve the problem, but his efforts were unsuccessful.  Rather than remit payment, LIVELY ROOT and BARCELOUX simply promised CAUGHEY that they would correct the deficiency at a later time.  They never did.

15.    By January 2022, CAUGHEY reached the limit of his patience.  He still had yet to receive the full compensation due under the Consulting Agreement.  After discovering in February 2022 that LIVELY ROOT had paid BARCELOUX and other select executives chosen by BARCELOUX exorbitant bonuses and salaries between 2021 and 2022, CAUGHEY confronted BARCELOUX about LIVELY ROOT's breach of the Consulting Agreement.  Moreover, these payouts to BARCELOUX and his cronies were made at the expense of LIVELY ROOT's budget, which hobbled the company's ability to acquire new customers.

16.     BARCELOUX did not offer CAUGHEY a satisfactory explanation, which caused CAUGHEY to become concerned about possible malfeasance on the part of BARCELOUX.  CAUGHEY took his concerns to the LIVELY ROOT board of directors, but rather than investigate the merits of CAUGHEY's claims, LIVELY ROOT fired him in March 2022.

## CLAIMS RELATED TO PLAINTIFF'S COMPUTER SOFTWARE PROGRAMS

17.     Plaintiff is in the business of designing, developing, marketing, and selling computer software programs.  Among others, he is the author and owner of original computer software programs which have been registered with the United States Copyright Office entitled "LR Fulfillment and Operations" (Reg. No. TXu-2-343-955); "LR Office Modules" (Reg. No. TXu 2-344-462); LR Theme (Rg. No. TXu 2-344-473 and; LR Picklist (Reg. No. TXu 2-344-532) (the "Subject Programs").  Plaintiff developed the Subject Programs at his own significant expense.

18.     Prior to the act complained of herein, Plaintiff was engaged by LIVELY ROOT, wherein Plaintiff disclosed the Subject Programs to Defendants, who then had access to the Subject Programs in connection with the operation of Defendants' online retail plant nursery storefront, accessible at https://www.livelyroot.com/.

19.     Plaintiff is informed and believes and thereon alleges that following his disclosure of, and Defendants' access to, the Subject Programs, LIVELY ROOT, BARCELOUX, DOE Defendants, and each of them without authorization used, copied, created derivative works of, publicly displayed, and/ or distributed or caused to be used, copied, created as a derivative works of, publicly displayed and/ or distributed the Subject Programs or similar computer software programs comprised of code language featuring unauthorized reproductions of the Subject Programs or code language which is substantially similar to the Subject Programs (hereinafter "Infringing Software Products").  Infringing Software Products include, but are not limited to, computer software programs, photographs and marketing prose used by

LIVELY ROOT, BARCELOUX, and Defendants in connection with the operation of their eCommerce plant nursery.

## CLAIMS RELATED TO PLAINTIFF'S PHOTOGRAPHS AND MARKETING PROSE

20.     Plaintiff took and edited hundreds of professional-grade photographs of plants and other related products, which would be sold through the Lively Root online retail portal, and he drafted written marketing collateral and associated text for use on the eCommerce site ("Marketing Prose").  Among others, he is the author and owner of 387 photographs which have been registered with the United States Copyright Office entitled "Lively Root Product Photos 2019" (Reg. No. VA 2-329-971) (the "Photographs").  Plaintiff created the Photographs at his own significant expense.

21.     Prior to the act complained of herein, Plaintiff was engaged by LIVELY ROOT, wherein Plaintiff disclosed the Photographs and Marketing Prose to Defendants, who then had access to the Photographs and Marketing Prose in connection with the operation of Defendants' online retail plant nursery storefront, accessible at https://www.livelyroot.com/.

22.     Plaintiff is informed and believes and thereon alleges that following his disclosure of, and Defendants' access to, the Photographs and Marketing Prose, LIVELY ROOT, BARCELOUX, DOE Defendants, and each of them without authorization used, copied, created derivative works of, publicly displayed, and/ or distributed or caused to be used, copied, created as a derivative works of, publicly displayed and/ or distributed the Photographs and Marketing Prose or similar photographs and marketing prose featuring unauthorized reproductions of the Photographs and Marketing Prose (hereinafter "Infringing Marketing Products").  Infringing Marketing Products include, but are not limited to, computer software programs, photographs and marketing prose used by LIVELY ROOT, BARCELOUX, and Defendants in connection with the operation of their eCommerce

plant nursery.

### DEFENDANTS' SPURIOUS DEMAND LETTER

23.     The conduct described above led CAUGHEY to engage legal counsel to pursue his claims.  Rather than litigate their dispute, the parties attempted to resolve their differences informally, through good-faith negotiations.  However, after seemingly agreeing to the terms of a global settlement with CAUGHEY, LIVELY ROOT unilaterally withdrew from the parties' negotiations and refused to finalize the settlement agreement tentatively reached with CAUGHEY.  LIVELY ROOT acted in bad faith during subsequent attempts to restart settlement discussions.

24.     On November 15, 2022, counsel for LIVELY ROOT, sent to counsel for CAUGHEY a letter, falsely alleging CAUGHEY had engaged in various acts of wrongdoing, including fraud, breach of contract, and misappropriation of trade secrets, and demanding that CAUGHEY:

> (1) state honestly, in writing, whether he has disclosed or used any non-public Lively Root information; (2) provide a written list identifying every person or third-party entity with whom he has shared or disclosed Lively Root Confidential Information; (3) confirm he has returned all Company property and Confidential Information or, if unable to truthfully make such a representation, provide us with information about the type of information that is in your possession and its current whereabouts; (4) cease and desist from any activity that violates the SPA and confirm that he will abide by its terms; and (5) confirm, in writing, that he will not pursue any claims, in law or equity, to any intellectual property upon which Lively Root operates and relies for its business.

(the "Demand Letter"). Ex. 1.

25.     LIVELY ROOT insisted that CAUGHEY had only three days to comply with its litany of draconian ultimatums, promising that if CAUGHEY did not capitulate by Friday, November 18, 2022, LIVELY ROOT would file a draft "check-the-box" complaint against him in California Superior Court for the County of San Diego.

FIRST AMENDED COMPLAINT

Case No. 3:22-cv-01868-RSH-AGS

26.     Counsel for CAUGHEY responded to LIVELY ROOT's attorneys on November 18, indicating he would need additional time to meet with his client about the issue.  LIVELY ROOT's counsel then replied that they would file their putative lawsuit against CAUGHEY on Monday, November 21, 2022.

27.     The allegations put forth in the Demand Letter arise out of and relate to the subject matter of the Subject Programs, Photographs, Marketing Prose, the Consulting Agreement, and that certain Common Stock Purchase Agreement, dated May 1, 2020, and entered into by and between CAUGHEY and LIVELY ROOT (the "SPA").  CAUGHEY expressly denies LIVELY ROOT's charges of wrongdoing and asserts that LIVELY ROOT's untrue allegations are designed solely to intimidate CAUGHEY and dissuade him from enforcing his rights in the Subject Programs, Photographs, and Marketing Prose or his right to compensation, pursuant to the Consulting Agreement.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement of the Subject Programs– Against All Defendants, and Each)

28.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

29.     Plaintiff is informed and believes and thereon alleges that LIVELY ROOT, BARCELOUX, DOE Defendants, and each of them, had access to the Subject Programs, including, without limitation, through (a) Plaintiff's disclosure of the Subject Programs to Defendants; and (b) access to computers, networks, and digital storage devices containing copies of the Subject Programs.  At no time did Plaintiff grant or transfer any rights in or to the Subject Programs, including title or license rights, to any of the Defendants.

30.     Plaintiff is informed and believes and thereon alleges that LIVELY ROOT, BARCELOUX, DOE defendants, and each of them, infringed Plaintiff's

8



copyright by creating, making and/or developing directly infringing and/or derivative works from the Subject Programs without authorization and by using, copying, publicly displaying, and/ or distributing or causing to be used, copied, created as a derivative work of, and/ or publicly displaying the Infringing Software Products, which are similar computer software programs comprised of code language featuring unauthorized reproductions of the Subject Programs or code language which is substantially similar to the Subject Programs through  their online eCommerce retail operations.

31.     Due to Defendants', and each of their, acts of infringement, Plaintiff has suffered damages in an amount to be established at trial.

32.     Due to Defendants', and each of their, acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained profits they would not otherwise have realized but for their infringement of the Subject Programs. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to the infringement of the Subject Programs in an amount to be established at trial.

33.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiff's rights such that said acts of copyright infringement were, and continue to be, willful, intentional and malicious.

**SECOND CLAIM FOR RELIEF**

(For Copyright Infringement of Plaintiff's Photographs and Marketing Prose–

Against All Defendants, and Each)

34.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

35.     Plaintiff is informed and believes and thereon alleges that LIVELY ROOT, BARCELOUX, DOE Defendants, and each of them, had access to the Photographs and Marketing Prose.  At no time did Plaintiff grant or transfer any

9



rights in or to the Photographs and Marketing Prose, including title or license rights, to any of the Defendants.

36.     Plaintiff is informed and believes and thereon alleges that LIVELY ROOT, BARCELOUX, DOE defendants, and each of them, infringed Plaintiff's copyrights by using, copying, publicly displaying, and/ or distributing the Photographs and Marketing Prose without Plaintiff's authorization.

37.     Plaintiff is informed and believes and thereon alleges that LIVELY ROOT, BARCELOUX, DOE defendants, and each of them, infringed Plaintiff's copyrights by creating, making and/or developing directly infringing and/or derivative works from the Photographs and Marketing Prose without authorization and by using, copying, publicly displaying, and/ or distributing or causing to be used, copied, publicly displayed, and/ or distributing the Infringing Marketing Products, which are similar photographs and marketing prose, through their online eCommerce retail operations.

38.     Due to Defendants', and each of their, acts of infringement, Plaintiff has suffered damages in an amount to be established at trial.

39.     Due to Defendants', and each of their, acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained profits they would not otherwise have realized but for their infringement of the Photographs and Marketing Prose. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to the infringement of the Photographs and Marketing Prose in an amount to be established at trial.

40.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiff's rights such that said acts of copyright infringement were, and continue to be, willful, intentional and malicious.



**THIRD CLAIM FOR RELIEF**

(For Declaratory Judgment – Against All Defendants, and Each)

41.    Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

42.    An actual controversy of a justiciable nature exists between the parties involving: (i) the rights and liabilities under the Consulting Agreement and the SPA; (ii) the nature and scope of any intellectual property rights owned by CAUGHEY; (iii) the nature and scope of any intellectual property rights owned by LIVELY ROOT, including any alleged trade secret rights; (iv) the nature and scope of LIVELY ROOT's computer networks and systems; (v) whether LIVELY ROOT infringes CAUGHEY's intellectual property rights; (vi) whether CAUGHEY misappropriated any trade secret owned by LIVELY ROOT; (vii) whether CAUGHEY  took any action to damage or compromise LIVELY ROOT's computer systems; and (viii) whether CAUGHEY or DEFENDANTS breached the Consulting Agreement or the SPA.  Litigation in these and other related issues either has already been initiated or is imminent and inevitable, and which controversies may be determined by a judgment of this Court.

43.    LIVELY ROOT has demanded that CAUGHEY cease and desist from certain purported instances of misconduct, as detailed in the Demand Letter. CAUGHEY denies any wrongdoing and contends Defendants infringe CAUGHEY's rights in the Subject Programs, Photographs and Marketing Prose and Defendants are in breach of the Consulting Agreement and SPA.

44.    CAUGHEY seeks an order from the Court, declaring the following:

  a.  That Defendants infringe CAUGHEY's rights in the Subject Programs, Photographs, and Marketing Prose;

  b.  That Defendants owns no valid, protectible trade secret rights;

  c.  That CAUGHEY has not unlawfully disclosed any trade secret



11

purportedly owned by Defendants;

    d.  That CAUGHEY is not in breach of the SPA;

    e.  That CAUGHEY has not "take steps to intentionally sabotage LIVELY ROOT computer systems in violation of [federal law];" and

    f.  That CAUGHEY has not committed fraud.

45.    CAUGHEY further requests an award of attorneys' fees, expenses (including without limitation CAUGHEY further requests an award of attorneys' fees, expenses (including without limitation expert witness fees) and costs pursuant to the SPA and/or Consulting Agreement.

## **FOURTH CLAIM FOR RELIEF**

### (For Breach of Contract – Against LIVELY ROOT)

46.    Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

47.    CAUGHEY and LIVELY ROOT, or its predecessor in interest, entered into an express written contract, the Consulting Agreement, which was and is valid, binding, and enforceable, whereby CAUGHEY agreed to provide certain technical services to LIVELY ROOT, or its predecessor in interest, in exchange for certain compensation, as described in the Consulting Agreement.

48.    CAUGHEY has materially and timely complied with all of his obligations and performed all, or substantially all, of the obligations, services conditions, and covenants required on its part to be performed under the Consulting Agreement, except to the extent they were waived or excused.

49.    Nevertheless, LIVELY ROOT breached, and is in breach, of the terms of its agreement with CAUGHEY because, among other things, LIVELY ROOT has refused to compensate CAUGHEY pursuant to the terms of the Consulting Agreement.



50.     LIVELY ROOT breached the terms of the Consulting Agreement by failing to pay CAUGHEY certain bonuses and stipends, due and owing as a result of his performance under the Consulting Agreement.

51.     CAUGHEY is informed and believes, and on that basis alleges, CAUGHEY has been harmed by LIVELY ROOT's breach in the amount to be proven at trial, plus interest and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (For Promissory Estoppel – Against all Defendants and each)

52.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

53.     BARCELOUX, as CEO of LIVELY ROOT, made unambiguous promises to Plaintiff regarding Plaintiff's compensation and bonuses to be paid by LIVELY ROOT.  BARCELOUX on numerous occasions promised Plaintiff that he would be paid the full compensation and bonuses due to him and that bonuses were not paid to other employees, owners, and contractors because certain company-wide financial goals had not been met.

54.     Plaintiff relied on BARCELOUX's promises in continuing to work for LIVELY ROOT despite not having received his full compensation or bonuses.

55.     Plaintiff's reliance was foreseeable and expected by BARCELOUX because he, as CEO, was in the position to make and keep such promises and was also privy to LIVELY ROOT financial information that Plaintiff did not have access too.

56.     Plaintiff relied on the promises to his detriment and worked for LIVELY ROOT for several months while being underpaid before being fired by LIVELY ROOT for notifying LIVELY ROOT's board of directors about BARCELOUX's false promises.

57.     Plaintiff is informed and believes, and on that basis alleges, he has been harmed by BARCELOUX's breach of promise in the amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

(For Fraud – Against all Defendants and each)

58.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

59.     BARCELOUX, as CEO of LIVELY ROOT, made false representations to Plaintiff regarding Plaintiff's compensation and bonuses.  BARCELOUX on numerous occasions represented to Plaintiff that he would be paid the full compensation and bonuses due to him and that bonuses were not paid to Plaintiff and other employees, owners, and contractors because certain financial goals had not been met.  Those representations were false, BARCELOUX knew they were false, and BARCELOUX intended to defraud Plaintiff by making those false statements.

60.     Despite falsely representing to Plaintiff that LIVELY ROOT would not pay Plaintiff a bonus for 2021 because LIVELY ROOT did not meet certain financial metrics and would not pay any bonuses for 2021 to any employee or owner, BARCELOUX did indeed authorize the payment of an estimated $200,000 in bonuses for 2021 to LIVELY ROOT employees and owners, including himself.  However, BARCELOUX did not authorize, and LIVELY ROOT did not pay, bonuses due to PLAINTIFF.

61.     Plaintiff relied on BARCELOUX's promises in continuing to work for LIVELY ROOT despite not having received his full compensation or bonuses.

62.     Plaintiff's reliance was justifiable because BARCELOUX, as CEO, was in the position to make such representations and keep such promises and he was also privy to LIVELY ROOT financial information that Plaintiff did not have access too.

63.     Plaintiff relied on the promises and misrepresentations to his detriment and worked for LIVELY ROOT for several months while being underpaid before

14



1  being fired by LIVELY ROOT for notifying LIVELY ROOT's board of directors

2  about BARCELOUX's false promises and misrepresentations.  Plaintiff has not been

3  made whole and LIVELY ROOT has not paid him the compensation and bonuses he

4  is owed.

5     64. Plaintiff is informed and believes that BARCELOUX and LIVELY

6  ROOT acted with malice, intent and knowledge when misrepresenting to Plaintiff

7  the status and basis for his compensation and bonuses.  BARCELOUX and LIVELY

8  ROOT knew that Plaintiff was likely to be deceived, and they intended to deceive

9  Plaintiff so as to avoid paying him money owed.  By defrauding Plaintiff, LIVELY

10  ROOT and BARCELOUX retained funds which they instead used to pay bonuses to

11  BARCELOUX and other select employees and owners of LIVELY ROOT.

12     65. Plaintiff is informed and believes, and on that basis alleges, he has been

13  harmed by BARCELOUX and LIVELY ROOT's fraudulent misrepresentations in

14  the amount to be proven at trial.

15     **<u>SEVENTH CLAIM FOR RELIEF</u>**

16     (For Negligent Misrepresentation – Against all Defendants and each)

17     66. Plaintiff repeats, realleges and incorporates by reference as though fully

18  set forth herein the allegations contained in the preceding paragraphs of this First

19  Amended Complaint.

20     67. BARCELOUX, as CEO of LIVELY ROOT, made representations to

21  Plaintiff regarding Plaintiff's compensation and bonuses without reasonable grounds

22  for believing them to be true.  BARCELOUX on numerous occasions represented to

23  Plaintiff that he would be paid the full compensation and bonuses due to him and that

24  bonuses were not paid to Plaintiff and other employees, owners, and contractors

25  because certain financial goals had not been met.  Those representations were false,

26  BARCELOUX did not have reasonable grounds to believe it was true, and

27  BARCELOUX intended to induce Plaintiff's reliance by making those statements.

28

68.     Despite falsely representing to Plaintiff that LIVELY ROOT would not pay Plaintiff a bonus for 2021 because LIVELY ROOT did not meet certain financial metrics and would not pay any bonuses for 2021 to any employee or owner, BARCELOUX did indeed authorize the payment of an estimated $200,000 in bonuses for 2021 to LIVELY ROOT employees and owners, including himself. However, BARCELOUX did not authorize, and LIVELY ROOT did not pay, bonuses due to PLAINTIFF.

69.     Plaintiff justifiably relied on BARCELOUX's promises in continuing to work for LIVELY ROOT despite not having received his full compensation or bonuses.

70.     Plaintiff's reliance was justifiable because BARCELOUX, as CEO, was in the position to make such representations and keep such promises and he was also privy to LIVELY ROOT financial information that Plaintiff did not have access too.

71.     Plaintiff relied on the promises and misrepresentations to his detriment and worked for LIVELY ROOT for several months while being underpaid before being fired by LIVELY ROOT for notifying LIVELY ROOT's board of directors about BARCELOUX's false promises and misrepresentations.  Plaintiff has not been made whole and LIVELY ROOT has not paid him the compensation and bonuses he is owed.

72.     Plaintiff is informed and believes, and on that basis alleges, he has been harmed by BARCELOUX and LIVELY ROOT's fraudulent misrepresentations in the amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

(For Breach of Fiduciary Duty – Against BARCELOUX)

73.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

74.     BARCELOUX became CEO of LIVELY ROOT in or around June 2020. In his role as CEO, BARCELOUX owed fiduciary duties to LIVELY ROOT's shareholders.  Plaintiff is a shareholder of LIVELY ROOT, therefore, BARCELOUX owed fiduciary duties to Plaintiff.

75.     BARCELOUX owed, at a minimum, duties of loyalty and care to LIVELY ROOT shareholders, including Plaintiff.

76.     BARCELOUX breached his fiduciary duties by paying himself and certain other LIVELY ROOT employees exorbitant salaries and bonuses. Additionally, BARCELOUX failed to disclose to Plaintiff the truth as to why Plaintiff was not paid his full compensation and bonuses and misrepresented to Plaintiff the status of bonuses to be paid to other LIVELY ROOT employees and owners.

77.     Plaintiff has been damaged by BARCELOUX's breaches of fiduciary duty in that he has not been paid his full compensation and bonuses, and the value of his ownership interest in LIVELY ROOT has been diminished by the exorbitant payments made to BARCELOUX and other select employees and owners in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### (For Defamation – Against BARCELOUX)

78.     Plaintiff repeats, realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this First Amended Complaint.

79.     Following CAUGHEY's confrontation of BARCELOUX, concerning the failure to pay CAUGHEY the compensation due under the Consulting Agreement, which BARCELOUX paid himself and others as much as $200,000 in bonuses, BARCELOUX made false statements regarding CAUGHEY, including intentionally and wrongfully misrepresenting to LIVELY ROOT personnel and to members of the company's board of directors, that CAUGHEY had misappropriated



company trade secrets and illicitly accessed and used company computer systems and networks, in violation of California state and federal civil and criminal laws.

80.   BARCELOUX made such statements not only intentionally, but recklessly and/or negligently and without any privilege.

81.   BARCELOUX's false statements are the type that tend to injure or cause harm.  In fact, his statements tainted and damaged CAUGHEY's reputation and proximately caused harm, injury, and damages to CAUGHEY and his business and trade.

82.   BARCELOUX's actions constitute defamation per se and CAUGHEY is entitled to presumed damages and/or damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

a.   That LIVELY ROOT, BARCELOUX, DOE Defendants —each of them—and their respective agents and servants be enjoined from creating, making and/or developing directly infringing and/or derivative works from the Subject Programs, Photographs, and Marketing Prose without authorization and from using, copying, publicly displaying, and/ or distributing or causing to be used, copied, created as a derivative works of, publicly displayed or distributed the Subject Programs, Photographs, Marketing Prose, or the Infringing Software Products, or the Infringing Marketing Products which include  similar computer software programs comprised of code language featuring unauthorized reproductions of the Subject Programs or code language which is substantially similar to the Subject Programs, through their online eCommerce retail operation, or otherwise trafficking in any product or service that infringes Plaintiff's copyrights in the Subject Programs, Photographs or Marketing Prose;

b.   That Plaintiff be awarded all profits of LIVELY ROOT, BARCELOUX, DOE Defendants, and each of them, plus all losses of Plaintiff, the exact sum to be



proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 101 *et seq.*;

    c.    That Plaintiff be awarded its attorneys' fees as available under the Copyright Act U.S.C. § 101 *et seq.*;

    d.    For an Order:

        i.    That Defendants infringe Plaintiff's rights in the Subject Programs, Photographs and Marketing Prose;

        ii.    That Defendants owns no valid, protectible trade secret rights;

        iii.    That Plaintiff has not unlawfully disclosed any trade secret purportedly owned by Defendants;

        iv.    That Plaintiff is not in breach of the SPA;

        v.    That Plaintiff did not "take steps to intentionally sabotage LIVELY ROOT computer systems in violation of [federal law];" and

        vi.    That Plaintiff has not committed fraud.

    e.    That Plaintiff be awarded contract damages in an amount to be proven at trial;

    f.    That Plaintiff be awarded all other general, special, compensatory, punitive, and consequential damages caused by Defendants' unlawful conduct;

    g.    That Plaintiff be awarded pre-judgment interest as allowed by law;

    h.    That Plaintiff be awarded the costs of this action; and

    i.    That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

/ / /

/ / /

/ / /



1         Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P.

2    38 and the 7th Amendment to the United States Constitution.

3

4    Dated: December 20, 2022          Respectfully Submitted

5    By: _____

6        Frederic G. Ludwig, III

7        LUDWIG, APC
    Attorneys for Plaintiff

8        PATRICK J. CAUGHEY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# Exhibit 1



Grant P. Fondo
+1 650 752 3236
GFondo@goodwinlaw.com

Goodwin Procter LLP
601 Marshall Street
Redwood City, CA  94063

goodwinlaw.com
+1 650 752 3100

Hayes P. Hyde
+1 415 733 6044
HHyde@goodwinlaw.com

Goodwin Procter LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111

goodwinlaw.com
+1 415 733 6000

November 15, 2022

**VIA E-MAIL: eric.ludwig@ludwigiplaw.com**
**VIA E-MAIL: pjcaughey@gmail.com**

Frederic G. Ludwig III                          Patrick Caughey
LUDWIG, APC
12463 Rancho Bernardo Road, No. 532
San Diego, CA 92128

**Re:     Caughey/Lively Root**

Dear Mr. Ludwig:

I write on behalf of our client Lively Root Technologies, Inc. ("Lively Root" or the "Company").  The purpose of this letter is to notify you of the serious concerns Lively Root has that your client, Patrick Caughey, has engaged in conduct contrary to his obligations to Lively Root, including, but not limited to, his obligations arising under the Lively Root Technologies, Inc. Common Stock Purchase Agreement that Mr. Caughey executed on May 1, 2020 (the "SPA").  A copy of the SPA is enclosed for your reference.

Lively Root has uncovered evidence that Mr. Caughey has breached his contractual and legal obligations relating to the Company's confidential and proprietary information.  Specifically, the Company's investigation, still ongoing, revealed that you attempted to download the entirety of the Company's Google Drive containing highly sensitive Confidential Information (as defined in the SPA) on the day of your resignation from Lively Root.  These documents reflect the Company's competitive analyses, pricing strategies, and other sensitive materials.  They also contain highly sensitive, confidential consumer information which Mr. Caughey is well aware he is prohibited from transmitting, obtaining, or keeping in this matter.

Lively Root has also learned through its investigation, including through communications with industry executives, that Mr. Caughey has attempted to secretly provide such highly sensitive, confidential information to third parties, including competitors of Lively Root in exchange for personal benefits.  These actions indicate an awareness that Mr. Caughey engaged in unlawful activity and suggest he intends to use the information he has usurped for an improper and competitive purpose.  Mr. Caughey's actions were unauthorized and in violation of his contractual obligations to Lively Root and may constitute misappropriation of trade secrets under the California Uniform Trade Secrets Act (Civil Code § 3426 *et seq.*) and the federal Defendant Trade Secrets Act (18 U.S.C. § 1836, *et seq.*), in addition to various other provisions of applicable state and federal common law.



Frederic G. Ludwig III
LUDWIG, APC
Patrick Caughey
November 15, 2022
Page 2

Lively Root has also been informed, and believes further discovery will reveal, that Mr. Caughey has engaged in unlawful, unfair, and/or fraudulent business acts that have directly harmed Lively Root. Such action includes, but is not limited to, using Lively Root time and resources for the benefit of non-Company entities such as Pixly, Inc.  Further, Lively Root's preliminary investigations reveal that Mr. Caughey has taken steps to intentionally sabotage Lively Root computer systems in violation of the federal Economic Espionage Act of 1996, 18 U.S.C. § 1832 and California Penal Code Section 502. Finally, Mr. Caughey has contacted third parties, including potential Lively Root business partners, to spread false claims and make disparaging statements about Lively Root in an intentional and improper attempt to interfere with Lively Root's existing contracts and prospective business relationships.

Although the full scope of Mr. Caughey's unlawful conduct is not yet clear, we have reason to believe he has engaged in this pattern of unlawful behavior in order to utilize Company Confidential Information for personal gain.

We are conducting further investigation to determine the extent of Mr. Caughey's violations and intend to pursue immediate legal action against him if this matter cannot be resolved in a satisfactory manner prior to litigation.  These legal actions include filing a lawsuit, as outlined in the attached, against him to enforce his compliance with his legal obligations to the Company, and to recover damages.  Lively Root is prepared to immediately pursue the claims contained in the attached complaint, and intends to amend as fitting pursuant to further investigation as it relates to the above-outlined misconduct.

Lively Root demands that you immediately cease and desist from the making defamatory or disparaging remarks to Lively Root competitors, customers, and prospective business partners.  Lively Root further demands that Mr. Caughey (1) state honestly, in writing, whether he has disclosed or used any non-public Lively Root information; (2) provide a written list identifying every person or third-party entity with whom he has shared or disclosed Lively Root Confidential Information; (3) confirm he has returned all Company property and Confidential Information or, if unable to truthfully make such a representation, provide us with information about the type of information that is in your possession and its current whereabouts; (4) cease and desist from any activity that violates the SPA and confirm that he will abide by its terms; and (5) confirm, in writing, that he will not pursue any claims, in law or equity, to any intellectual property upon which Lively Root operates and relies for its business.

Please send the written response requested above via email either to me (hhyde@goodwinlaw.com) or to Greg Wharton (greg@livelyroot.com) **by no later than 5 pm PST on Friday, November 18, 2022**. I will review the information you provide and will then supply you with further instructions on how Mr. Caughey should sequester and return any misappropriated information.  <u>To be clear, Mr. Caughey should not attempt to access, destroy, or otherwise alter the files and materials containing the Company's Confidential Information that remain in his possession</u>.



Frederic G. Ludwig III
Lᴜᴅᴡɪɢ, APC
Patrick Caughey
November 15, 2022
Page 3

We urge your client to take these issues seriously.  If he does not comply, I have been instructed to pursue all legal remedies to preserve Lively Root's rights, including by filing the attached complaint next week, and to purse all legal remedies against anyone with whom he may have shared the Confidential Information or who benefitted from his unlawful actions, to the fullest extent of the law. This includes Pixley.  Lively Root reserves all rights and remedies.

Because this matter may lead to litigation, please ensure that Mr. Caughey takes all necessary steps to preserve and not alter any evidence pertaining to this matter, including, but not limited to, emails and Mr. Caughey's personal Github account.  This letter is not intended to contain a complete statement of facts with respect to the subject matter hereof, and my client does not waive any legal or equitable rights or remedies available to it, all of which are expressly reserved.  As I am sure you recognize, these are serious matters that require yours and you're your client's immediate attention.  I look forward to receiving your assurances that any further violations will not occur.

Please contact me should you have any questions.

Sincerely,

/s/ *Hayes P. Hyde*

Hayes P. Hyde
HPH:scr
Attachments
cc:     Grant P. Fondo